

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00254-CV

**IN THE INTEREST OF J.J.J.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-00585
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: July 19, 2017

AFFIRMED

Jane and Joe[1] appeal the termination of their parental rights to J.J.J. Jane and Joe argue there is legally and factually insufficient evidence that termination of their parental rights is in J.J.J.'s best interest. Joe also challenges several of the trial court's findings of statutory grounds to terminate his parental rights. We affirm the trial court's judgment.

### BACKGROUND

When J.J.J. was born in January 2016, he tested positive for cocaine and marijuana, and the Department of Family and Protective Services filed suit for conservatorship and to terminate Jane's and Joe's parental rights. The trial court granted the Department temporary managing

---

[1] To protect the identity of the minor child, we refer to the child's parents by aliases and to the child by his initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).

conservatorship, and J.J.J. was initially placed with Joe, with Jane being allowed only supervised possession. However, the court ultimately removed J.J.J. from Joe and J.J.J. was placed with a foster-adopt family.

Before J.J.J. was born, Jane had her rights to another child terminated, and three months before trial in this case, she gave birth to another child who tested positive for drugs, specifically cocaine and methamphetamine.[2] As of the week before trial, Jane and Joe were living at Haven for Hope, which provides temporary housing for the homeless.

The case proceeded to a bench trial, at which Department caseworker Denise Santos and a Court Appointed Special Advocate (CASA) volunteer testified. Jane and Joe did not personally appear.[3] The trial court also admitted a May 2015 order terminating Jane's parental rights to her other child, S.W. After trial, the trial court signed a final judgment awarding the Department conservatorship and terminating Jane's and Joe's parental rights to J.J.J. Jane and Joe appeal.

### STANDARD OF REVIEW

A judgment terminating parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio

---

[2] The child was removed from Jane, and the Department initiated a separate proceeding to terminate Jane's parental rights to that child.

[3] Joe's ad litem announced not ready, but stated she notified Joe about the hearing and had not heard from him since. Jane's ad litem also announced not ready, but did not state whether Jane was personally notified of the hearing.

2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable determinations of credibility. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

A legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* But we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence. *Id.* When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

### JANE'S APPEAL

Jane argues there is legally and factually insufficient evidence to support the trial court's finding that termination of her parental rights is in J.J.J.'s best interest. The best-interest determination is a wide-ranging inquiry, and the Texas Supreme Court has set out some factors relevant to the determination:

- the desires of the child;
- the emotional and physical needs of the child now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of the individuals seeking custody;
- the programs available to assist these individuals to promote the best interest of the child;
- the plans for the child by these individuals or by the agency seeking custody;
- the stability of the home or proposed placement;

- the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
- any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The list is not exhaustive, and not every factor must be proved to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. Evidence of only one factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when undisputed evidence shows that the parental relationship endangered the child's safety. *Id.* "Evidence that the parent has committed the acts or omissions prescribed by section 161.001 may also be probative in determining the child's best interest; but the mere fact that an act or omission occurred in the past does not *ipso facto* prove that termination is currently in the child's best interest." *In re O.N.H.*, 401 S.W.3d at 684 (internal citation omitted). "A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.).

At the time of trial, J.J.J. was fourteen months old. When a child is too young to express his desires, the factfinder may consider whether the child has bonded with his current caregiver and is well-cared for, and whether the child has spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). J.J.J. was removed from Jane when J.J.J. was an infant. Caseworker Santos testified J.J.J. was placed with foster parents and his sister three months before trial, and that the placement was "going very well." She explained the foster parents are providing a stable environment for J.J.J., taking him to his medical and dental appointments, and willing to adopt J.J.J. The CASA volunteer testified J.J.J. has bonded "very very well" with his foster parents and is happy, J.J.J.'s development is on track, and he has numerous toys at his foster home.

Santos further testified that when J.J.J. was born, he tested positive for cocaine and marijuana, and Jane tested positive for methamphetamine, cocaine, marijuana, and oxycodone. Santos stated Jane did not complete any of her services, did not appear for drug testing, and after J.J.J. was removed, gave birth to a child who tested positive for cocaine and methamphetamine. It is reasonable to infer Jane's drug use exposed J.J.J. to emotional and physical danger, Jane continued to use drugs in a manner that similarly endangered another child, and Jane did not seek rehabilitation. *See In re T.R.*, 491 S.W.3d 847, 853-56 (Tex. App.—San Antonio 2016, no pet.) (considering parent's drug use and failure to submit to drug testing as evidence supporting a best-interest finding). The May 2015 order terminating Jane's parental rights to S.W. contained findings that Jane constructively abandoned S.W., failed to comply with provisions of a family service plan required for S.W. to be returned to her, and had a mental or emotional illness or mental deficiency rendering her unable to provide for S.W.'s needs.

Santos testified Jane was scheduled for three visits with J.J.J. a month, but she attended only four visits while the case was pending and arrived late to some of those visits. According to Santos, Jane was asked to bring age-appropriate food for J.J.J., but she brought either chili or no food at all. Santos stated J.J.J. was unable to chew the food, and Jane "put it in her mouth and she chewed it and then put it in [J.J.J.'s] mouth." Santos further testified Jane "said that she wanted to work her services, and that she would be providing me with information, but she never did." She also testified Jane did not have stable housing or employment, and was unable to meet her own needs.

Jane argues the evidence is conclusory, does not support any of the *Holley* factors, and even shows some of the *Holley* factors weigh in her favor. For example, she argues the evidence shows she attended visits and was willing to "go to such lengths" as pre-chewing J.J.J.'s food when he could not chew the food himself. Jane also argues the evidence that she attended four visits

shows her failure to complete her services was not "out of disinterest or laziness." Jane's arguments require viewing the evidence in the light most favorable to her and drawing inferences in her favor instead of in favor of the trial court's finding. Our standard of review precludes such a view of the evidence. *See In re J.F.C.*, 96 S.W.3d at 266. We also disagree with Jane's characterization of the evidence as conclusory. We hold a reasonable factfinder could have formed a firm belief or conviction that termination of Jane's parental rights is in J.J.J.'s best interest. *See id.*

### JOE'S APPEAL

The trial court found several alternative grounds to support its order terminating Joe's parental rights. The trial court first found by clear and convincing evidence that Joe, J.J.J.'s alleged biological father:

> after having waived service of process or being served with citation in this suit . . . did not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code before the final hearing in this suit.

*See* TEX. FAM. CODE. ANN. § 161.002(b)(1) (West Supp. 2016) (providing the rights of an alleged father may be terminated if "after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160"). The trial court also made three alternative findings of grounds to support termination of Joe's parental rights under section 161.001 of the Texas Family Code. The trial court found Joe knowingly endangered J.J.J., constructively abandoned J.J.J., and failed to comply with provisions of his court-ordered family service plan. *See id.* § 161.001(b)(1)(D), (N), (O). Joe challenges the three alternative findings under section 161.001, but not the trial court's finding under section 161.002. Because Joe does not challenge the trial court's finding under section 161.002, the trial court's judgment must be affirmed on that ground and we need not address Joe's issues challenging the trial court's other findings of grounds to terminate Joe's parental rights. *See In re J.J.S.*, No. 04-14-00793-CV, 2015

WL 794012, at *1 (Tex. App.—San Antonio Feb. 25, 2015, no pet.) (mem. op.). Moreover, the trial court's finding under 161.002(b)(1) is supported by the record.

Joe also argues there is legally and factually insufficient evidence that termination of his parental rights is in J.J.J.'s best interest. Santos testified J.J.J. was placed with Joe during the first eight months of this case. Although she testified Joe and J.J.J. appeared to have a bond at the beginning of the case, she noted Joe attended only four visits[4] after J.J.J. was placed with the foster-adopt family and that Joe also failed to provide appropriate food for J.J.J. The CASA volunteer testified that when J.J.J. was placed with Joe, she visited Joe's home and J.J.J. "seemed to be a very sad child" and "there was just no bonding there." She explained J.J.J. rarely smiled, had no toys, "never engaged in any play activities," and "just gave you a stare like a deer looking at headlights." The CASA volunteer also testified Joe did not "engage in any form of communication with [J.J.J.]," and that Joe told her "he didn't want to be a full-time parent." On the other hand, J.J.J. has bonded well his foster parents, and the CASA volunteer testified J.J.J. is happy living with his foster parents and his sister.

Santos further testified J.J.J. was removed from Joe because he was not cooperating with the Department, did not allow the Department regular access to J.J.J., and allowed Jane to have unsupervised access to J.J.J. She testified women's clothing, prenatal pills, and Jane's prescription bottles were found in Joe's home and that Jane was answering Joe's phone. According to Santos, Joe had been diagnosed with anti-social personality traits, but he did not engage in counseling services. Santos stated J.J.J. "appeared well cared for" while he was placed with Joe, but the CASA volunteer testified Joe's apartment was not baby-proofed and was "very, very unclean," Joe had no furniture, and the smoke detector did not work. She stated J.J.J. had a crib, but he slept on a

---

[4] The four visits Joe attended were the same four visits Jane attended.

mattress on the floor "and medicines were on the floor." Santos stated the last time she went to Joe's apartment, "there was a box outside with belongings. It appeared as though he wasn't living there anymore." Santos testified Joe and Jane were living at Haven for Hope as of the week before trial, and Joe did not provide proof of employment during the case. She opined Joe did not have stable housing or employment and was unable to meet his own needs. Considering all of the relevant evidence, we hold a reasonable factfinder could have formed a firm belief or conviction that termination of Joe's parental rights is in J.J.J.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice